In the Matter of the Application of Michael T. Daly, Commissioner of Public Works of the City of New York, etc., Relative to Acquiring Title in Fee to Certain Lots, Pieces or Parcels of Land in the Twelfth and Twenty-third Wards of the City of New York for the Purpose of the Construction of a Drawbridge, etc.

Moses G. Wright and Others, Appellants; The Mayor, Aldermen and Commonalty of the City of New York, Respondent.

*Eminent domain — apportionment of rent of leased premises, part of which is taken for a public use — damages recoverable by the lessee.*

Under section 982 of the Consolidation Act (Chap. 410, Laws of 1882), providing that when a part only of leased premises is taken for a public improvement, all contracts and engagements shall, after confirmation of the report of the commissioners, "cease, determine and be absolutely discharged as to the part thereof so taken, but shall remain valid and obligatory as to the residue thereof; and the rents, considerations and payment reserved or payable, and to be paid for or in respect to the same, shall be so apportioned as that the part thereof justly and equitably payable, or that ought to be paid for such said residue thereof and no more, shall be determined or paid or recoverable for or in respect of the same," the apportionment relates merely to the ascertainment of what rent shall be paid by the tenant for the untaken portion of the land, regard being had to the rental value of the part taken.

As just and proper compensation to a tenant cannot always be made in the apportionment of the rent, under this section of the statute, the tenant may be entitled to some award of substantial damages, not included in the apportionment of rent, such damages being based upon all the facts connected with the situation of the property, its uses and its value.

Appeal by Moses G. Wright and others from portions of an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 22d day of September, 1897, confirming the fifth separate report of commissioners of assessment and apportionment appointed in the proceeding.

*Edward G. Black* and *Charles E. Miller*, for the appellants.

*Charles D. Olendorf*, for the respondents.

Patterson, J.:

This is an appeal from an order made at Special Term confirming the report of the commissioners of estimate and assessment in the

above-entitled proceeding. By their fifth separate report they represented to the court that there had been taken for the purposes of the improvement, with carrying out which they were charged, a part of a block of ground situate in the twenty-third ward of the city of New York, and bounded by the Third avenue, Lincoln avenue, the Southern boulevard and the Harlem river. The Third avenue front of the premises was taken by the commissioners to be used for an approach to a bridge across the Harlem river. The parcel taken is known on the commissioners' map as No. 37 in block 1795 of the twenty-third ward. The commissioners estimated the value of the land taken, including the buildings and improvements thereon, at $112,250. Of this amount they awarded $9,750 to lessees or tenants and the balance to the owners of the fee of the land thus taken. It appears that the premises in question belong to the estate of Bryan Lawrence, deceased. Mr. Lawrence had leased the entire block to the Messrs. Wright for a period of ten years from May 1, 1891, at the rate of $12,000 per annum, taxes, water rates and assessments to be paid by the lessees, who also covenanted to erect upon the premises buildings of not less than a certain value, which were forthwith to become the property of the lessors. Buildings costing much more than the minimum mentioned in the lease were erected upon the demised premises, and parts of such buildings stood upon that portion of the land taken by the commissioners in this proceeding. Both the lessors' representatives and the lessee's appeal from the order of confirmation, the former contending that the whole award belongs to the owners of the fee, the latter claiming that the award is altogether insufficient, is evidently made upon erroneous principles and in disregard of the lessee's right to compensation for their property interest in the unexpired term of the lease.

The general principle upon which the award is made seems to be correct. The city is not bound to make greater compensation for all the combined interests in the land taken than the full value of the fee. It must be regarded as definitely settled that "the proper way of assessing the damages, where two or more persons have distinct interests or estates" in any parcel of ground required for a public improvement, is to ascertain first the damage to the fee as if it were owned entire and unincumbered by one person, and then to

apportion that amount among all the estates and interests which such persons have in the property. (*Wiggin* v. *The Mayor*, 9 Paige, 19.) " This rule applies to the case of mortgagors and mortgagees, and to undivided owners as well as to lessors and lessees." (*Coutant* v. *Catlin*, 2 Sandf. Ch. 538.) The fundamental principle, therefore, upon which the value was ascertained by the commissioners in this proceeding was right, and the question remains as to how the apportionment of this gross amount should be made between the persons interested in the award.

The parcel of land taken is only a part of that which was under lease from Lawrence to the Wrights. It is provided by section 982 of the Consolidation Act (Chap. 410, Laws of 1882) that when a part only of leased premises is taken for a public improvement, all contracts and engagements respecting the same shall, after confirmation of the report of the commissioners, " cease, determine and be absolutely discharged as to the part thereof so taken, but shall remain valid and obligatory as to the residue thereof; and the rents, considerations and payment reserved or payable, and to be paid for or in respect to the same, shall be so apportioned as that the part thereof justly and equitably payable, or that ought to be paid for such said residue thereof and no more, shall be determined or paid or recoverable for or in respect of the same." The precise point arising on this provision of the statute is whether the tenants' compensation for the destruction of their term in the part of the leased premises taken is confined only to an allowance of their damages in the apportionment of rent, or whether that apportionment is merely to determine what shall be paid during the preserved term for the part of the premises not taken, so that the tenants may be permitted to recover such damages as may have been sustained by reason of special losses arising from the destruction of the term as to the part of the land taken for the improvement.

The representatives of the lessor insist upon the proposition that the whole compensation is involved in the apportionment of the rent, and, upon that theory, that they are entitled to the whole award made by the commissioners in this case. All that is advanced by way of authority for the proposition of the lessor's representatives is a dictum in the case of *Phyfe* v. *Eimer* (45 N. Y. 102), but that dictum is not supported by authority, and is contrary to any just or

equitable view of the subject. The provisions of the Consolidation
Act, applicable here, are the same as those contained in section 181
of the act of 1813, to which act construction was given in several
cases of importance. It is said in *Gillespie* v. *Thomas* (15 Wend.
464), " That the commissioners, in making their estimate and assess-
ment of damage or benefit, are to take into consideration the benefit
and advantage of the *tenant* as well as the *owner* over the loss or dam-
age and *vice versa*." The tenant is considered owner of the term,
and the landlord of the reversion, and the benefit and damage in
respect to each interest in the premises are to be regarded by
the commissioners in making their estimate. It was said in *The
Matter of William & Anthony Streets* (19 Wend. 685), " We can-
not suppose that the Legislature would nullify the covenants between
landlord and tenant without providing for a just and equitable adjust-
ment of their respective interests under the contract in the award
of damages." There is no reason why the same rule should not
apply where part of the demised premises only is taken. The stat-
ute says that the rent shall be so apportioned as that the part thereof
justly and equitably payable or that ought to be paid for such resi-
due and no more, shall be determined or paid, or recoverable for or
in respect of the same. In commenting upon this provision of the
statute Judge NELSON, in *Gillespie* v. *Thomas* (*supra*), said : " The
*part* only of the rent justly and equitably chargeable upon the
remainder of the demised premises is enjoined upon the tenant, and
which seems to imply that the *annual value* of that portion of the
premises of which he is deprived *shall be abated*." The apportion-
ment seems to relate merely to the ascertainment of what rent shall
be paid by the tenant for the untaken portion of the land, regard
being had to the rental value of the part taken. In the opinion last
quoted from Judge NELSON also says, ".The statute then which pro-
vides that the rent ' *shall be so apportioned as that the part thereof
justly and equitably payable or that ought to be paid for such resi-
due* ' of the premises, when taken in connection with the other pro-
visions of the act, in my judgment clearly means nothing more nor
less *than a common-law apportionment*. In order to determine what
would be a just and equitable part of the rent to be paid for such
residue, it is necessary to ascertain and abate what would justly and

equitably belong to the part taken in a ratable apportionment, according to value." The provision of the statute under consideration, therefore, relates only to the ascertainment of how much shall be paid by the tenants for the residue of their term in the untaken property. Are the commissioners bound in making that ascertainment to fix the rent after an allowance to a tenant of all the special damage he may have sustained by the destruction of buildings or by the loss of increased rentals received by him on sub-leases of the property taken? It seems to me that the statute intends merely to fix a ratio of rent between the property as it stood and the untaken part upon the basis stated by Judge NELSON in the case above referred to, and that in the fixing of damages as between landlord and tenant, or as between reversioner and owner of the term, the damages sustained by the tenant, and not entering into the apportionment of rent, are to be allowed upon some equitable basis. Both the landlord and the tenant may suffer by reason of the taking of the land; the former, by the destruction *pro tanto* of the term; the latter, by the extinguishment of the fee and loss of rent of the part taken.

It is impossible to formulate any general rule to cover each case by a precise definition of what is to be allowed, but I think it is quite clear that the same rule applies with respect to damage between reversioner and the holder of a term for years, whether the land is wholly taken or whether it is only partially taken, and that just and proper compensation to a tenant cannot always be made in the apportionment of the rent under the section of the statute now under consideration. This case presents precisely that feature. The property is so situated, the lessees' relation to it is such, the uses to which it has been put are such, and the value of the term to the lessees is such that they cannot be compensated for the taking of their interest in the land simply by an ascertainment of how much rent shall be paid in the future to the lessor for the property reserved from the improvement, and as to which the covenants of the lease continue.

It is further urged by the learned counsel for the lessors' representatives that the statute terminates all the covenants of the lease in such a way as to deprive the tenants of any other benefit than that of an apportionment of the rent, and that the terms of the

statute are incorporated in the lease by operation of law, precisely as if there had been an express stipulation between the parties contained in the lease.   That is undoubtedly so, but the statute reads into the lease no other or further or wider term than that of the act itself, and with the same effect, which is that the covenants of the lease are terminated *pro tanto*, subject to the rights of either party as they exist at law.

If I am right in the foregoing view of the case, it follows that the lessees were entitled to some award of substantial damages not included in the apportionment of rent.

Upon an examination of the whole evidence I am not satisfied that they were entitled to any more than the commissioners allowed. They are not entitled as against the lessor to everything in the way of damage they may sustain, irrespective of the detriment the lessor may suffer by the taking of the property and the destruction of the term.   The entire value of the lessees' term is not to be carved out so that the whole burden will come exclusively upon the landlord.   The latter it is true gets compensation for the property taken, but there may be resulting losses that are not covered by the actual market value of the land condemned.   If such a rule were to be applied, it is quite evident that, upon long leases, the whole value of the fee might be absorbed for the benefit of the tenant.   A fair and equitable adjustment is to be made, based upon all the facts connected with the situation of the property, its uses and its value, and I do not perceive that the commissioners have committed any error in their adjustment of the rights of the parties in this particular case. Here was a lease which imposed upon the lessees various duties and obligations of the payment, in addition to rent, of taxes and water rents, and they were to be at charges for repairs and interest upon investment.   In the exercise of their best judgment, the commissioners found that the tenants were entitled to a certain sum as damages.   With their finding I see no reason to interfere, unless the whole loss occasioned by the improvement is to be charged against the owners of the fee, which certainly cannot be the rule.

I think the order appealed from should be affirmed, without costs.

VAN BRUNT, P. J., O'BRIEN and McLAUGHLIN, JJ., concurred.

Order affirmed, without costs.