■ BEN HASNAS, Respondent, v MORRIS HASNAS et al., Appellants. — In a consolidated action for the dissolution of a partnership, the appointment of a receiver, injunctive relief and to recover against a tenant for use and occupancy of premises owned by the partnership, the defendants appeal from an order of the Supreme Court, Kings County (Vaccaro, J.), dated September 18, 1981, which *inter alia,* granted plaintiff's motion to confirm a referee's report and failed to grant defendants' cross motion to confirm said report in part and to reject it in part. Order modified (1) by striking the first and second decretal paragraphs thereof and by substituting therefor a provision that the motion

and cross motion are disposed of to the extent that the findings of the referee are confirmed except the following, which are disaffirmed: (a) finding 5 that "[t]he fair market value of the partnership property is $295,000.00"; (b) finding 6 (b) that "[t]he value of each partner's interest in the partnership capital as of July 31, 1981 * * * is: BEN, $179,884.31; IRVING, $72,777.26; [and] MORRIS, $154,186.89"; (c) the subsidiary statement and finding (on pp 16-17 of his report) that "the aggregate fair value of the entire property, adjusted to give effect to the value of these 4 cranes permanently affixed thereto is $295,000.00"; (d) the subsidiary findings (contained in "TABLE #4", at p 21 of his report) separately valuing the property and "4 original cranes", the finding which states that the total fair market value of the property is $295,000 and the finding which states that the increase in assets to appraised values is $273,388.56; and (e) the resultant capital balance computations as of July 31, 1981 that are based upon the $295,000 valuation of the partnership property (contained in the concluding section of his report, at pp 21-22, entitled "Total Capital"); and (2) by striking the ninth decretal paragraph thereof. As so modified, order affirmed, without costs or disbursements, and matter remitted to the Supreme Court, Kings County, for a hearing, to be held with all convenient speed, to determine the value of the partnership property as of July 31, 1981 and to thereupon compute the value of the respective interests of the partners in the partnership assets, in accordance with the following memorandum. The report of the referee, Paul I. Krohn, rendered July 31, 1981, stated: "The issues to be determined by the referee are as follows: 1. What is the interest of each of the partners in the profits of the partnership? 2. What is the interest of each of the partners in the capital of the partnership? 3. Is Empire obligated to pay rent to the partnership for the period of August 1, 1976 to December 31, 1976? 4. What is the gross annual rental required to be paid by Empire [defendant Empire Electric Co., Inc.] to the partnership from January 1, 1977? 5. What is the fair market value of the partnership property? 6. What is the value of each partner's partnership interest, as of December 28, 1977 and as at July 31, 1981?" His report makes the following findings:

"FINDINGS

"1. The respective interests of the three partners in the profits and losses of the partnership are:

| "BEN | 42.86%; |
|------|---------|
| "IRVING | 21.43%; |
| "MORRIS | 35.71%. |

"2. The respective interests of the three partners in the capital of the partnership are:

| "BEN | 42.86%; |
|------|---------|
| "IRVING | 19.43%; |
| "MORRIS | 37.71%. |

"3. Empire was obligated to pay rent to the partnership for the period August 1, 1976 to December 31, 1976 at the monthly rental of $3,500.00, less taxes, water and sewerage charges it paid directly for the account of the partnership during that period.

"4. Empire was required to pay a gross annual rental of $42,000.00, to the partnership from January 1, 1977 in monthly installments of $3,500.00, less taxes, water and sewerage.

"5. The fair value of the partnership property is $295,000.00.

"6. a) The value of each partner's interest in the partnership capital as of December 28, 1977 is:

"BEN                  $34,112.37  
"IRVING             $12,810.51  
"MORRIS           $29,751.31

"b) The value of each partner's interest in the partnership capital as of July 31, 1981, (the date of this report) is:

"BEN                  $179,884.31  
"IRVING             $ 72,777.26  
"MORRIS           $154,186.89".

In the ensuing section, entitled "FINDINGS BY REFEREE", he set forth the factual bases for, and legal rationale of, his findings. We conclude from our examination of this 15-volume record on appeal and the briefs, that the referee's findings numbered 1, 2, 3, 4 and 6 (a) concerning the percentage interests of the partners in the profits, losses, and the capital of the partnership, the rental obligations of defendant Empire Electric Co., Inc., and the valuation of the partnership capital as of December 28, 1977, are fully established by a preponderance of the evidence and that said findings were rendered in conformity with the mandate of the referring court that the "burden of proof and all procedural and substantive rules of law [are] to apply [in proceedings before the referee] as if [the] matter were tried before this Court". Thus, with respect to findings numbered 1, 2, 3, 4 and 6 (a), Special Term was correct in confirming the referee's report. However that may be, for the reasons which follow we disagree with the method used to compute the fair value attributed to the partnership property and, it follows then, that the valuation of each partner's interest as of July 31, 1981, is likewise erroneous. At page 16 of his report, the referee stated that: "I find that the original 4 cranes are permanently affixed to the property". We hold that the referee's conclusion in that respect is also established by a preponderance of the evidence. The referee further stated, however, that: "I adopt [the court-appointed appraiser's] appraisal of $160,000.00 as the fair value of the PROPERTY subject to adjustment as described below * * * Based on all of the testimony given by both experts and the written appraisals submitted and marked in evidence, I find that the fair value of the PROPERTY is $160,000.00 before giving consideration to the cranes hereinafter discussed * * * I find that * * * [the] said original four cranes, as described in the report of the Court-appointed appraiser [have] values of $25,000, $30,000, $50,000, $30,000 respectively, for an aggregate value of $135,000, and that the aggregate fair value of the entire property, adjusted to give effect to the value of these 4 cranes permanently affixed thereto is $295,000.00." We have no quarrel with the separate valuations given the realty and the cranes by the referee. The evidence supports the $160,000 realty valuation as well as the $135,000 crane valuation. Thus, if we were dealing with separate awards or if the summation of the separate valuations was the appropriate and proper method for determining the value of the partnership property herein we would not disturb the referee's findings. However, the separate valuations and summation of those valuations to arrive at a composite valuation of the realty as improved by the cranes was not the proper methodology to be employed and was legally erroneous (see *City of Buffalo v Clement Co.,* 28 NY2d 241; *Marraro v State of New York,* 12 NY2d 285; *Jackson v State of New York,* 213 NY 34 [opn Cardozo, J.]). In our view, the *City of Buffalo, Marraro* and *Jackson* cases, which deal with awards in condemnation cases, furnish the correct methodology to be used in this matter. Thus, in the *Marraro* case the Court of Appeals stated (12 NY2d 285, 292, *supra*): "At the risk of reciting platitudes, it may clarify the controversy if brief reference is made to the general law of fixtures in eminent domain. An

appropriation of land by the State, unless qualified when made, is an appropriation of all that is annexed to the land, whether classified as buildings or as fixtures, and the value of the fixtures must be included in determining the total value of property so appropriated (*Jackson* v. *State of New York,* 213 N. Y. 34). They are part of the realty so long as they remain fixtures (*Matter of Willcox,* 165 App. Div. 197, 200). Mere personalty, even though used in conjunction with real property, is not compensable at all (cf. *Madfes* v. *Beverly Development Corp.,* 251 N. Y. 12, holding gas ranges not to be fixtures but mere personalty; *Stahl* v. *Norwich,* 204 App. Div. 552, holding ordinary lighting fixtures to be mere personalty), and personal property which has lost its identity by becoming a structural part of a building can no longer become the subject of a separate award (*Matter of City of New York* [*Delancey St.*], 120 App. Div. 700)." In the *City of Buffalo* case, the Court of Appeals held (28 NY2d 241, 261-262, *supra*): "The question of whether the Appellate Division erred in striking the separate award for $84,000 for machinery which could not economically be removed, however, requires independent consideration. Relying on the authority of *Great A. & P. Tea Co.* v. *State of New York* (22 N. Y.2d 75, *supra*), the Appellate Division held that in light of Clement's prior removal of all other machinery it is reasonable to assume that these items were not removable without substantially damaging the freehold and thus could not be the subject of a separate award for fixtures. The reliance is in the final analysis misplaced. Firstly, to hold that certain machinery is not compensable by way of a *separate* award is not to say, as the Appellate Division apparently concluded by neglecting to increase the realty award (by either 'in place value' or by 'moving costs' whichever under *Rose* v. *State of New York* [24 NY2d 80], would apply), that it is not compensable at all. Indeed, as noted above, the concept of full compensation requires that an appropriation of land by the condemning authority, unless qualified when made, be deemed an appropriation of all that is annexed to the land, whether classified as buildings or as fixtures, and the value of fixtures be included in determining the total value of the property so appropriated (*supra,* pp. 259-260 and citations therein). Reasoning as it did, the inference is irresistable that the Appellate Division found that the machinery was so affixed to the realty as to constitute a part thereof. As such it was error for the court to strike the separate award without simultaneously making some provision for its value in the realty award." In the *Jackson* case, the Court of Appeals held (213 NY 34, 35-36, *supra*): "CARDOZO, J. The State appropriated the claimant's warehouse in the village of Middleport for the use of the barge canal. The Board of Claims found that the value of the building was $9,000 and that of the land $1,300. The claimant had an award for those amounts. The board also found that the building contained machinery, shafting, elevators and conveyors of the value of $4,353.20. The form in which these articles was annexed to the freehold, and the purpose of the annexation, were such that, as between vendor and vendee they would have constituted fixtures. For the enhancement of value due to the presence of these fixtures, the Board of Claims refused to award compensation to the claimant. The ruling has been affirmed at the Appellate Division on the ground that the State, after appropriating the warehouse, had the right to reject the fixtures and refuse to pay for them * * * It is intolerable that the State, after condemning a factory or warehouse, should surrender to the owner a stock of second-hand machinery and in so doing discharge the full measure of its duty. Severed from the building, such machinery commands only the prices of second-hand articles; attached to a going plant, it may produce an enhancement of value as great as it did when new * * * If the State has the right, under a general notice of appropriation, to insist that title to the fixtures has passed

to it with the land, the owner has the correlative right to insist upon payment. The law does not leave the title in a state of suspense. The value of the fixtures ought, therefore, to have been considered in estimating the total value of the property appropriated by the State." Accordingly, in the case at bar, the referee's separate valuations for the building and cranes, the summation of those valuations, the resultant $295,000 "Total Fair Market Value of the Property" valuation, and the calculations based thereon, have their source in a legally erroneous methodology and should have been disaffirmed by Special Term. The proper method was to value the real property as enhanced by the subject four cranes affixed to the building. We have examined all of the defendants' other contentions and find no further basis for disturbing the order under review. For the reasons stated the matter is remitted to the Supreme Court, Kings County, for a supplementary hearing and redetermination by the court to correct the error. Such proceedings shall be conducted with dispatch. Bracken, J. P., Brown, Niehoff and Rubin, JJ., concur.